[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Commissioner of Environmental Protection for the State of Connecticut, "Commissioner" and the Town of Hamden and Joseph Venditto, zoning enforcement officer, hereinafter referred to as ("Hamden"), have brought this action against the six defendants in a fourth amended complaint.
This amended complaint contains ten counts. The first seven counts contain allegations made by the Commissioner against each of the six defendants. The eighth through the tenth counts contain allegations made by Hamden against all of the defendants. In each of these counts Hamden incorporates all of the allegations against the defendants contained in the first seven counts and then in each count adds additional specific allegations against the individual defendants.
In the second paragraph of Count One the Commissioner alleges that defendant, Joseph J. Farricielli, is president and director of each of the corporate defendants named. He further states that at all times relevant to the allegations in this complaint defendant, Farricielli, managed the day-to-day business operations and had the authority to control the business operations of each of tire corporate defendants and that defendant Farricielli has exercised complete control and dominion over the corporate defendants.
In his answer the defendant, Farricielli, admits these allegations.
In paragraphs five through ten of the first count the Commissioner describes basically four parcels of land which for purposes of this trial are designated as parcels A, B, C and the North Haven parcel (often included in Parcel B). This land lies basically between State Street in Hamden and North Haven on the west and the Quinnipiac River on the east. The properties are more specifically known as number 441. State Street, North Haven, which is the so called North Haven Parcel, number 2935 State Street, Hamden, Connecticut, known as Parcel B which as mentioned above is usually included with the North Haven Parcel. South of Parcel B is 2895 State Street, Hamden, known as Parcel C. South of that parcel is number 2891 State Street, Hamden, known as Parcel A. The North Haven Parcel and Parcel B are also referred to often as the Tire Pond. CT Page 13029
In paragraph four of the complaint the Commissioner alleges that Hamden Salvage is a corporation which is, or has been, engaged in the transportation and disposal of solid waste. In paragraph ten the commissioner alleges that defendant Hamden Sand and Stone is engaged in the business of transporting and disposing of solid waste.
The gravamen of this case is contained in paragraph eleven of the First Count. It states that on February 27, 1998 plaintiff Commissioner issued a Consent Order ("Consent Order") which had been signed by Mr. Farricielli on behalf of himself individually and then on behalf of defendants, Tire Salvage and Tire Disposal. A copy is attached to the complaint and incorporated by reference.
This Consent Order required the respondents to take certain steps to close and cap the Tire Pond and to refrain from taking certain other actions without a permit from the Commissioner.
In paragraph 12 of Count One the Commissioner alleges that Farricielli failed to respond fully to all of the deficiencies in the Tire Pond closure plan by April 15, 1998 as required by the Consent Order. In paragraph 13 plaintiff alleges that defendant failed to submit for the Commissioner's review and approval a proposal for a bond adequate to cover the cost of closing the Tire Pond by April 15, 1998. In paragraph 14 plaintiff alleges that defendant, Farricielli, failed to provide the Commissioner with a certification concerning the purpose of bonds held by the towns of Hamden and North Haven and failed to provide the Commissioner with documentation concerning the purpose and structure of the bonds within sixty days of the issuance of the Consent Order. The Commissioner did not pursue this allegation in his case in chief or his brief. In paragraph 15 the Commissioner maintains that defendant failed to take all steps necessary and appropriate to expeditiously obtain, and thereafter to maintain, all approvals required by the state and towns of Hamden and North Haven for closure of the Tire Pond. In paragraph 16 the Commissioner alleges that Farricielli failed to submit for the Commissioner's review and approval a dike stabilization plan and a full and complete application for a Stream/Channel Encroachment Permit and a registration for general permit number LIS-GP-009 by April 15, 1998. Paragraph 17 alleges that Farricielli failed to take steps necessary and appropriate to expeditiously obtain, and thereafter maintain, all approvals required by the state and the Towns of Hamden and North Haven for work to be performed pursuant to the dike stabilization plan. Paragraph 18 maintains further that he failed to submit for the Commissioner's review and written approval a full and complete plan and schedule for undertaking to restore an area of tidal wetlands at the northeast corner of the North Haven Parcel together with necessary permit CT Page 13030 application materials by April 15, 1998. In paragraph 20 the Commissioner claims that Farricielli failed to pay $20,000 to support non-profit organizations for work to improve the environment within ninety days of the issuance of the Consent Order.
Paragraphs 12 through 19 pertain to failures to adhere to the requirements of the Consent Order.
Paragraph 20 of the complaint refers to violations of the Consent Order and violations of pertinent statutes. In paragraph 20 the Commissioner alleges that Farricielli did not cease operation of solid waste facilities on Parcel A without a permit including a solid waste disposal area, a volume reduction plant and/or a transfer station within ninety days of the issuance of the Consent Order and in violation of Gen. Stat. § 22a-208a and that he continued operation of these facilities without a permit. Paragraph 21 alleges that Farricielli did not cease operations of solid waste facilities at the Tire Pond without a permit, including a solid waste disposal area, within ninety days of the issuance of the Consent Order in violation of said Order and in violation of Conn. Gen. Statute Sec. 22a-208a in that he has continued to operate a sold waste disposal area at the Tire Pond including disposal of more than 10 cubic yards of tires and construction and demolition (CD) debris from August 1999 to October of 1999 and defendant has no permit for a solid waste disposal area, transfer station or volume reduction facility at the Tire Pond.
In paragraph 22 of Count One the Commissioner alleges that Farricielli has initiated, created, originated or maintained a discharge of water substance or material into the waters of the state at parcel A without a permit for such discharge.
In paragraph 23 the Commissioner makes the same allegations but with respect to the Tire Pond.
In Counts Two through Seven the Commissioner impleads each of the corporate defendants. He incorporates by reference paragraphs one through eleven of Count One and adds the same allegations as in Count One but tailored to each of the corporations.
Although Mr. Farricielli was at one time represented by two different attorneys they were allowed to withdraw from this case and Mr. Farricielli entered an appearance Pro Se. This appearance was entered for the benefit of himself as defendant. No appearances were ever entered thereafter for the corporations.
Before trial the Commissioner filed a Motion for Default for Failure to CT Page 13031 Appear against the corporations. This was unopposed and granted by the Court.
Count Eight is labeled "Hamden Versus All Defendants For Violations of Regulations" and contains 135 paragraphs, which incorporate all paragraphs of Counts One through Seven of the complaint.
In paragraph 136 Hamden alleges that defendant Farricielli and the defendant corporations commenced the illegal activities set forth in the preceding counts without obtaining the required Town of Hamden Special Permit and Site Plan approval in violation of the zoning regulations.
In paragraph 137 Hamden alleges that Parcels A, C and the Tire Pond are within the coastal boundary defined in C.G.S. § 22a-94 and that the activities set forth in the proceeding counts were commenced without the required approval of the Town under the Coastal Area Management Act (CAM) which requires coastal municipalities to undertake a coastal Site Plan review and that, therefore, these activities are a public nuisance and a violation of CAM.
Paragraph 138 alleges that the activities set forth in the preceding counts are regulated activities under the Hamden Inland/Wetlands Regulations (I/W) and that the defendant Farricielli and the corporate defendants engaged in these activities without a permit in violation of the Inland Wetlands statutes and the Hamden I/W Regulations.
Count Nine is labeled "Hamden versus All Defendants For Violations of Stipulated Judgment." In paragraphs 1 through 138 Hamden incorporates all of the prior paragraphs of the complaint.
In paragraph 139 Hamden refers to a certain Stipulated Judgment entered in the Superior Court, District of New Haven known as Town of Hamden,Hamden Zoning Enforcement Officer vs. Joseph Farricielli, Tire Salvage,Inc., d/b/a The Tire Pond, Hamden Salvage, Inc., d/b/a The Tire Pond. andNorth Haven Tire Disposal, Inc., Docket No. CV 950380053 5, ordering the defendants to cease all disposal of tires and solid waste on Parcels A, B and C and to cease all excavation and filling of the property owned by the defendants until and unless permitted by the Hamden Planning and Zoning Commission and the Hamden Conservation Commission. A copy of the stipulation and judgment was attached to and incorporated in the complaint.
In paragraph 140 Hamden alleges that, as set forth in greater detail in the previous counts, defendants have not ceased all disposal of tires and solid waste on Parcels A, B, and C, and have not ceased all excavation and filling of the property owned by the defendants, nor have they CT Page 13032 obtained the necessary permits as required by the stipulated judgment and subsequent modification.
In paragraph 141 of Count Nine Hamden maintains that as set forth above the defendants have not obtained the necessary permits nor has the Tire Pond been closed and capped, all as required by the stipulated judgment and subsequent modifications.
Count Ten is labeled "Hamden v. Defendants Farricielli, Hamden Salvage, Quinnipiack, Hamden Sand Stone, as successor to Hamden Salvage, and Hamden Sand Stone, for Violation of Regulations and Illegal Discharge." In this count Hamden incorporates essentially all of the paragraphs of the prior counts by reference. In the remaining paragraphs Hamden alleges that the defendant, Farricielli, has by and through the defendant corporations and on information and belief and through other companies under his control at least since August 1977, deposited or caused to be deposited on Parcel A for use by off-site entities, scrap metal, piles of pumice, top soil and fragmented metals and that they have also deposited, or caused to be deposited on Parcel A, for use by off-site entities, trucks, trailers, car parts all in violation of Section 572.2d 649, 725, 731 of the Hamden regulations governing outdoor storage and C.G.S. § 47a-11 (g), all of the above having been done without a permit or site plan approval. Hamden further alleges that the defendants continue to use, process, and store scrap metal, piles of pumice, top soil and fragmented metals, trucks, trailers, and other car parts on Parcel A in violation of the Hamden regulations and with full knowledge that such activity is subject to the permit requirements set forth in the regulations and that in so doing they have maintained a discharge of water, substance and material into the water of the state at Parcel A without a permit for such discharge issued by the Commissioner and in violation of Hamden Regulations, and that such materials leach pollutants into the soil which migrate to the surface and ground waters of the state.
This Fourth Amended Complaint contains two requests for relief, the first is that filed by the Commissioner who seeks to have defendant Farricielli and the corporate defendant be temporarily and permanently enjoined from violations of C.G.S. § 22a-208a and for the Court to enter a temporary and permanent injunction requiring Farricielli and the corporations to comply with the terms of the Consent Order and have the court order a temporary and permanent injunction requiring the defendants to remove and properly dispose of all solid waste brought to Parcel A without a permit since May 1998 and a similar requirement that they remove and properly dispose of all solid waste brought to the Tire Pond without a permit since March 1998, also that the defendants pay a civil penalty, not to exceed $25,000 per day, for each day or each violation CT Page 13033 pleaded in this complaint. In addition the Commissioner requests such other relief as is just and equitable to effectuate the purposes of this action.
In the second request for relief Hamden requests that the Court order the following: all prohibitory or managerial relief sought by the Commissioner; a judgment in favor of Hamden including, but not limited to, an order restraining defendants from violations of law and regulations set forth herein; that they comply with terms of the Stipulated Judgment dated December 18, 1995; an order mandating removal and proper disposal of all solid waste, scrap metal, piles of pumice, top soil and fragmented metals, trucks, trailers, and car parts brought to the Tire Pond without permits since December 18, 1995; an order mandating removal and proper disposal of all tires and solid waste brought to the Tire Pond without a permit since December 18, 1995; and that an order that unless permits and approval required by Hamden regulations and state law have issued Parcel A, B, and C shall not be used for disposal, transfer, storage, processing and/or other activity involving tires, solid waste, pumice, top soil, fragmented metal, trucks, trailers and/or car parts and that all excavation and filling activities on the property cease; an order that the defendant initiate the closure and capping of the Tire Pond in accordance with the closure plan incorporated into the Consent Order, and that the Court award Hamden civil penalties, fees, costs and attorneys fees.
The defendant, Farrcielli, has filed an answer in which paragraphs 1 through 11 of the First Count are admitted. These are mainly the paragraphs identifying corporations and the issuance of the Consent Order. As to paragraph 12 indicating that Farricielli failed to respond fully to all of the deficiencies in the Tire Pond closure plan, defendant pleads lack of knowledge. As to paragraph 13, he admits that he failed to submit for the Commissioner's review and approval the proposal for a bond adequate to cover the costs of closing the Tire Pond. He denies paragraph 14 alleging the failure of the defendant to provide the Commissioner with a certification concerning the purpose of the bond held by Hamden and North Haven and paragraph 15 alleging the failure to take all steps necessary to expeditiously obtain and maintain approvals required by the state and the Town of Hamden for the closure of the Tire Pond.
As to paragraph 16 alleging failure to submit for the Commissioner's review a dike stabilization plan the defendant pleads no knowledge. As to paragraph 17 alleging that Farricielli failed to take all steps necessary to obtain and maintain approvals required by the state and Hamden for work to be performed on the dike stabilization plan, this is denied. As to paragraph 18 regarding failure to provide a plan for an area of tide lands, the defendant pleads lack of knowledge. As to paragraph 19 wherein CT Page 13034 the Commissioner alleges that defendant failed to pay $20,000 to support a non-profit organization, the defendant denies this with respect to the payment but admits that it was not done within the 90 days. As to paragraph 20 the defendant denies that he continued to operate a solid waste disposal area but he admits that he had no permit from the Commissioner to construct or operate a solid waste disposal area, transfer station, or volume reduction facility. As to paragraph 21, Farricielli denies that he has continued to operate a solid waste disposal area at the Tire Pond but he admits that he has no permit from the Commissioner to construct or operate a solid waste disposal area, etc. As to paragraph 22 alleging that Farricielli has initiated, created, originated, or maintained a discharge of water, substance or material into the waters of the state without a permit he leaves the plaintiff to his proof as to the basic allegation and he denies that he has brought solid waste to Parcel A for disposal, and he also admits that he had no permit to initiate, create, or maintain a discharge of water, substance. With respect to the same allegation made in paragraph 23 but with reference to the Tire Pond he denies that he has disposed of solid waste into the Tire Pond but he admits that he has no permit from the Commissioner.
As to Count Eight the defendant, Farricielli, states his lack of knowledge with respect to sic "paragraph 1 of the Fourth Amended Complaint," as to paragraph 135 the defendant states that the statutes to which this paragraph refers speak for themselves and the content is neither admitted nor denied, and he states the same with reference to paragraph 136, 137, and 138.
As to Count Nine defendant incorporates paragraph 1 through 138 and refers to paragraph 139 in which he states that the stipulated judgment speaks for itself therefore it is neither admitted nor denied.
In Count Ten the defendant admits the first sentence of paragraph 99 which states that he has by and through the defendant corporations, and other companies under his control, at least since August 1997 deposited, or caused to be deposited, on Parcel A for use by off-site entities, scrap metal, piles of pumice, top soil and fragmented metals. As to the balance of this paragraph he states that he lacks knowledge. As to paragraph 100 alleging the depositing of truck, trailers, and so forth on Parcel A, he pleads lack of knowledge. Paragraph 101 alleging the issuance of a cease and desist order is denied. Paragraph 102 is admitted wherein Hamden alleges that on or about March of 1999 defendant applied for a special permit for temporary storage but then withdrew it. He denies paragraph 103 wherein it is alleged that he continues to use, process and store scrap metal and so forth. As to paragraph 104, the defendant states that he lacks knowledge as to whether these materials CT Page 13035 deposited on Parcel A leach pollutants into the soil, he denies that he brought such material to Parcel A for disposal, storage, processing, transfer, and/or volume reduction and he admits that he has no permit from the Commissioner or the town to initiate, create, originate, or maintain a discharge of water, substance, or material into the waters of the state in Parcel A.
To summarize, the defendant denies all of the basic allegations against him with respect to violation of the Consent Order and the statutes but admits to having no permits to conduct the activities alleged by the Commissioner.
In addition he files two special defenses. The first special defense is of Unclean Hands in which he alleges (1) that Department of Environmental Protection (DEP), agreed to the continuation of certain activities on Parcel A and B which are now the subject of this litigation, (2) that DEP induced the defendant to sign the Consent Order under false pretenses, (3) that the DEP knew the defendant was conducting remedial activities on Parcel A, condoned them until they were almost completed and then subsequently identified these activities as alleged violations of the solid waste laws. (4) He further accuses the Commissioner of bringing this litigation as retaliatory for a certain legal action in Federal Court brought against the Commissioner by the defendant.
In a second special defense he maintains that C.G.S. §§ 22a-207 and 209 are unconstitutionally vague because they are enforced in an arbitrary manner and on an ad hoc basis because the definitions contained therein are subject to further interpretation which varies among DEP employees.
The corporate defendants each filed an answer and special defenses, however it is unnecessary to go into them since they were defaulted for failure to appear.
The Commissioner has filed a reply to the special defenses in which he has denied each special defense.
This case was heard between September 20 and October 26, 2000. During the course of the trial the plaintiff Commissioner presented nineteen witnesses, a majority of whom are experts in their fields, all related to environmental concerns. Hamden presented one witness, the defendant, Joseph Farricielli, and the Commissioner presented seven witnesses in rebuttal.
The defendant presented a representative of DEP, a former attorney and himself as witnesses. CT Page 13036
Plaintiff presented some eighty-eight different exhibits, including numerous photographs and letters between the parties, while the defendant presented seventy-one exhibits.
Each of the three parties filed comprehensive briefs and reply briefs. A transcript, of the trial was provided each party as well as the Court. This transcript, as might well be imagined considering the length of time the trial occupied, fills a cardboard file box. The exhibits fill two full cardboard file boxes.
Each party submitted substantial briefs and reply briefs. Only Hamden observed Section 4-6 of the Practice Book limiting the size to 35 pages. The Commissioner's brief consisted of 133 pages plus six reprints of cited cases. His reply brief consisted of 52 pages.
Defendant's trial brief consisted of 64 pages with one exhibit, and his reply brief consisted of 30 pages plus an appendix of reprints of cases cited and an affidavit.
The Court did not object to the lengths of these briefs because of the detail in the case and also because of the briefs filed by the plaintiff. In the opinion of the Court the briefs submitted by the plaintiff were, despite their length, a model of structure, detail, logical development and citations to cases and to the transcript of the record. In addition to the briefs supplied by the Commissioner and the defendant, the Town of Hamden, filed a post trial memorandum and a reply brief each of which consisted of approximately ten pages, was very succinct and covered adequately all matters involving the Town of Hamden which were not covered by the other parties briefs. The briefs and reply briefs of all parties were of considerable help to the Court.
The Court examined the pleadings in this case many times, read and re-read the briefs and reply briefs, examined all of the exhibits and in many instances checked the transcript of the record.
All the material allegations of the complaint put in issue for legal and for equitable relief are herewith found for the plaintiffs, Commissioner, Hamden and Joseph Venditto against Joseph Farricielli and the corporate defendants. The issues raised by Mr. Farricielli's special defenses are found for the plaintiffs.
While the standard of proof in this case is a fair preponderance of the evidence, plaintiffs, both the Commissioner and Hamden, working in concert and individually, established proof of the material allegations in the complaint exceeding that standard. This was accomplished by CT Page 13037 documentary evidence, by eyewitness accounts, photographs on the scene, and expert testimony. Defendant, Farricielli, on the other hand, having denied a number of the allegations in the complaint, failed to contradict these allegations and in general simply failed to rebut the evidence against him.
The Consent Order contained both prohibitions and affirmative obligations and the plaintiffs' evidence at trial proves that Mr. Farricielli failed to meet his affirmative obligations and ignored the prohibitions on operating solid waste facilities without a permit. The defendant did not contest the fact that the major elements of the Consent Order, immediate closure of the Tire Pond and stabilization of the dikes separating the Tire Pond from the Quinnipiac River, were never completed. Instead he interjects a new element which has no support in the record to the effect that without the financial wherewithal to pay the engineering costs he was unable to complete the closure plan. He offers no support for this allegation. Defendants' arguments concerning operation of a solid waste facility mischaracterizes the law and distorts the factual record. Mr. Farricielli has completely failed to overcome the plaintiffs' evidence that he brought large amounts of solid waste to Parcel A after May 28, 1998, and interred it on site or left it for more than forty-five days, nor was he able to rebut the plaintiffs evidence that he operated a sorting area for solid waste on Parcel A nor that he operated a transfer station by leaving containers of more than ten cubic yards of solid waste on Parcel C and B for subsequent transfer off site.
The parties, that is the Commissioner, the corporate defendants and Farricielli, entered into a Consent Order in February 1998. This contained both mandatory obligations and prohibitions. The Court finds that the plaintiffs have established that the defendants have not done what they were required to do and have done what they were prohibited from doing in the Consent Order. Specifically the defendants failed to take necessary steps towards the closure and capping of a water impoundment at the north end of the site, the Tire Pond, where the defendant had dumped over 15 million tires. The defendants failed to submit an approval plan for stabilization of a dike which separates the Tire Pond from the Quinnipiac River and failed to remediate a wetland on the northeastern corner of the site. Instead the defendant dumped more tires into the Tire Pond and operated other illegal solid waste facilities as well.
As stated above the defendants concede that Mr. Farricielli managed the day-to-day business operations and had the authority to control the business operations of each of the defendant corporations during the time period covered by the complaint. CT Page 13038
Parcel A had for many years been used to excavate clay. In the 1970's and 80's Mr. Farricielli, through his corporations, operated the site as a landfill until his permit was suspended and finally revoked. Parcel A was also used for operating a reduction facility. For a brief period it was operated by the Quinnipiac Group (Q-Group) until it was shut down by the Commissioner's order in 1996 for additional problems.
Mr. Farricielli maintained the offices and papers of his various corporations on Parcel C. He also and operated a scale house there as well as a solid waste transfer station. Parcel C is between Parcel A and B.
Parcel B was also an old clay pit with excavation at its deepest point of 140 feet. At some point the dike between the pit and the river was breached and water was allowed to flow in establishing a large pond most of which is in Hamden although a portion is in North Haven. In the mid 1970's Mr. Farricielli began to use the Tire Pond for disposal of discarded tires for which he obtained a permit from the water bureau, a department of the DEP. However, he failed to obtain a solid waste permit which was also required. It is estimated that approximately 15 million tires have been dumped into the pond at Parcel B over the years.
While some of the corporate defendants own portions of the land described above, the defendant conducted most of his business through Hamden Salvage and lately through defendant, Hamden Sand and Stone. Hamden Salvage engaged in the business of demolishing buildings, carting containers of solid waste, sorting waste, selling what was valuable and discarding the balance.
On February 27, 1998 after approximately twenty-five years of difficulty with Mr. Farricielli and the corporate defendants, citations for many violations and the issuance of many orders, the Commissioner issued a Consent Order pertaining to Parcel C.[1] This order directed the defendants to immediately cease operation of any solid waste facilities on Parcel C without permits. The second of two Consent Orders, that which forms the basis of the allegations in the complaint, required the defendants to cease operating unpermitted solid waste facilities anywhere in the state within ninety days of the date of the order and also required them to take specific affirmative steps to close and cap the Tire Pond. On July 1999, with a return date of August 10, 1999, the Commissioner filed the complaint in this case. On January 3, 2000, the Court entered, unopposed, a temporary injunction prohibiting further operation of solid waste facilities on the property of the defendants' pending adjudication of the merits. On January 27 the plaintiff filed a motion for contempt alleging violation of the terms of the temporary injunction. This motion for contempt, however, was not CT Page 13039 acted upon and remains outstanding.
In the opinion of this Court, the defendants have clearly violated the Consent Order and the statutes and regulations of the State of Connecticut pertinent to this case. The defendants failed to fulfil their affirmative obligations under the Consent Order. They failed to take the necessary steps to close the Tire Pond. They failed to continue to retain one or more qualified consultants to perform and supervise remedial activities. They failed to revise the drafts of the Tire Pond closure plan by April 15, 1998, and they failed to submit a proposal for a bond adequate to cover the cost to the state of closing the Tire Pond in accordance with said plan. There never was an approved plan to take to the towns of Hamden and North Haven for their approval as required under the Consent Order. Mr. Farricielli failed to provide 65 thousand tons of clean fill a year to the Tire Pond and he failed to fulfill the requirements for water quality monitoring associated with the Tire Pond.
In the opinion of the Court the requirements for this water monitoring was not excessive nor was it punitive, as claimed by Mr. Farricielli. The defendants were required under the Consent Order to submit a complete dike stabilization plan covering the dike between the Quinnipiac River and the Tire Pond and after approval by DEP were to take steps to obtain local approvals for the work, post a bond, do the work, and monitor the results. The purpose of the dike stabilization plan was to correct certain areas of erosion and undercutting of the bank by the river. While they did present a plan, they never followed through on certain points which the state wished to have clarified. The dike remains unstabilized and unprotected from erosion from the Quinnipiac River.
The defendants were to submit for the Commissioner's review and written approval, a plan and schedule for undertaking to restore an area of tidal wetlands by the northeast corner of the North Haven parcel, obtain the necessary permits and perform the work outlined in the approved plan. Such a plan was never completed and the tidal wetlands restoration work was never done. Paragraph c (2) of the Consent Order required that within ninety days of the issuance of the Consent Order the defendants were to cease operation of any solid waste facility, including solid waste disposal area, volume reduction plant or transfer station without a permit from the Commissioner.
The evidence indicates that the defendants operated solid waste disposal areas on Parcels A and B, a volume reduction plant on Parcel A and a transfer station on Parcel B and C, for which they had no permits from the Commissioner as they admit.
The violation of the Consent Order was also a violation of C.G.S. CT Page 13040 § 22a-208a (b) and also § 22a-208c.[2] The plaintiffs successfully established that the defendants brought substantially more than 10 cubic yards of solid waste to Parcel A from offsite and disposed of it there on a regular basis and this included construction and demolition debris, fragmented metal (frag metal), and other discarded metals, clearly within the terms of C.G.S. § 22a-207 (6). Despite the defendants' claim that material brought to the site was brought there by the Q-Group, the evidence was clear that the material which the Commissioner claims was a violation of the statute was not only that which was left there by the Q-Group but included new waste. Much of the evidence used by the state in this matter included test holes dug by representatives of the state in which they found new material. Much of this material brought on site was used to fill the pond on Parcel A. The Court is of the opinion that a conservative estimate of the amount of solid waste buried on Parcel A between May 28, 1998 and October 26, 1999 when the operation of Parcel C appeared to shut down, was approximately 57,000 cubic yards. In summation it appears to the Court that the defendants brought a significant amount of construction and demolition debris to Parcel A within this period and interred it there on site. In addition to construction and demolition debris the defendants brought a large amount of fragmented metal to Parcel A where it was accumulated and remained on site at the time of trial. This would be considered solid waste. The deposit of this frag metal without a permit is a clear violation of C.G.S. § 22a-208a (b).
In addition to the interring of demolition and construction material and storage of frag metal, the defendants stored scrap metal on site for longer than forty-five days thus creating a disposal area. This was in violation of the Consent Order and C.G.S. §§ 22a-208a (b) and (c) and22a-208c.
Also in violation of the Consent Order the defendants operated a volume reduction plant at Parcel A. The defendants maintained a sorting area as part of its container service business and part of the demolition business. Waste was brought onto the sites, sorted to separate out material that could be resold, e.g. — metals. Kenneth Chase, a former driver of the defendants', testified that he had dumped solid waste from off site at the sorting area on Parcel A on many occasions. While Mr. Farricielli questioned whether or not the sorting area met the threshold capacity to be a volume reduction area, that is whether the machine could handle 2000 pounds of material per hour, this Court is of the opinion that it was capable of handling substantially more than; that based upon the evidence provided.
Plaintiffs have established to the satisfaction of the Court that the defendants operated a solid waste transfer station on Parcels C and D. CT Page 13041 Large roll-off containers of 30 cubic yards and 40 cubic yards capacity containing construction and demolition debris and some tires were stored on Parcel C for transfer and eventual disposal.
In addition to operating a solid waste disposal area on Parcel A, the defendants operated such a disposal area on Parcel B which was composed of tires, construction and demolition waste and glass. The testimony and all the photographs and tests indicated clearly that construction and demolition material had been dumped around the perimeter of the Tire Pond. In addition glass aggragate was disposed of in and around the pond.
The activities at Parcel A, B, and C are not only in violation of the Consent Order and the solid waste laws but also the state's water pollution control laws (C.G.S. § 22a-430) which provides that no person shall initiate, create, originate, or maintain any discharge of water, substance or material into the waters of the state without a permit for such discharge. Miss Patton, an expert in this field, testified that construction and demolition debris left on the ground would inevitably generate leachate when rain water percolates through the pile. From an environmental standpoint this represents pollution and requires a permit for all construction and demolition landfills. The defendant had no such permit.
On January 3, 2000 a temporary injunction, which was not objected to by the defendants, decreed that the defendants would "immediately cease all activities involving management of solid waste, including moving any existing solid waste piles" on Parcels A, B, and C. Defendants also violated this temporary injunction.
The defendants plead two special defenses. The first was the defense of unclean hands. The unclean hands defense is based primarily upon what at best could be called some misconceptions by Mr. Farricielli with respect to his claim that the department had agreed to continued activities on Parcels A and B. The department did grant the ninety days grace period and did not proceed to take action against Mr. Farricielli immediately thereafter. There is, however, no evidence whatsoever that the department was changing any of the points made in the Consent Order. This clearly called for Mr. Farricielli to cease operations. Mr. Farricielli also claimed that he was induced to sign the Consent Order by promises that a permit belonging to his former tenant, the Q-Group, would be transferred to him or that he would be given a permit during the ninety day grace period, but he had no evidence to present to verify this statement. No promises were made to Mr. Farricielli concerning his ability to obtain a permit. Contrary to another claim by defendant the DEP did not bring this action to address remedial activities on Parcel A prior to May 28, 1998. CT Page 13042 The complaint before the Court relates only to disposal of solid waste which the defendant brought to the site after May 28, 1998; it does not relate to relocation of the waste brought in by the defendants' tenant prior to the signing of the Consent Order.
Despite his claim there was no evidence that this action was brought in retaliation for the suit brought in federal court by Mr. Farricielli against the Commissioner alleging that he failed to enforce solid waste laws against Q-Group and that this constituted a violation of the Resource Conservation and Recovery Act (RCRA).
In the opinion of this Court Mr. Farricielli's second special defense that the statutes and regulations are unconstitutionally vague is completely without merit. Two of the challenged statutes have already been held to be constitutional (C.G.S. §§ 22a-207 (4) and (6))Connecticut Building and Wrecking Co. v. Carothers, 218 Conn. 580, 588
(1991). The Court finds that these statutes can be understood by "a person of ordinary intelligence" and that he was not a victim of arbitrary and discriminatory enforcement, two of the elements necessary to prove a statute unconstitutionally vague. While the mass of statutes, regulations and litigation regarding the field of environmental protection today has become "mind boggling" as stated by Judge Fasano in an opinion rendered with respect to this case, the Court finds that any given statute or regulation as applied to a particular case is generally understandable by the average layman. In this case the Court also finds that the defendant is no "average layman" but practically a specialist in the field of environmental law; first because of his constant association over a period of twenty-five years with the DEP and matters of interpretation of their statutes and regulations and also as demonstrated by his superior knowledge of the subject in the presentation of this case.
All the defendants are liable for the violations found by the Court. Corporate defendants are liable for all violations by virtue of their default for failure to appear. Mr. Farricielli is personally liable as the person who signed the Consent Order and under the Doctrine of Corporate Officer Liability. Connecticut Building and Wrecking Companyv. Carothers, supra, Scribner v. O'Brien, Inc., 169 Conn. 389, 403-404
(1975); BEC Corp. v. DEP, 256 Conn. 602 (2001).
Civil penalties are specifically authorized for violations of a the solid waste laws and regulations and for violations of orders issued pursuant to those laws. C.G.S. § 22a-226 (a), states that any person who knowingly violates the provisions of this chapter, any regulation, permit or order issued under this chapter shall be assessed a civil penalty not to exceed $25,000 to be fixed by the Court for each offense. Each violation is a separate and distinct offense and in the case of CT Page 13043 continuing violations, each day's violations is to be deemed to be a separate and distinct offense. The water pollution chapter of the statutes contains a similar provision (C.G.S. § 22a-435 (a)). For the Commissioner to seek injunctive relief all that must be shown is a violation of an ordinance or a statute. Conservation Commission v.Price, 193 Conn. 414, 429 (1984). C.G.S. §§ 22a-226 and 22a-435
provide that if any person violates any provision of these sections or any regulation, permit or order adopted or issued under them, the Commission may request the Attorney General to bring an action in the Superior Court for the Judicial District of Hartford to enjoin such person from such violation and to order immediate measures to prevent, control or abate pollution. In the opinion of this Court the established violations of the Consent Order and the statutes referred to herein are a sufficient foundation for a grant of injunctive relief. In addition, the defendants have knowingly and persistently violated the Consent Order and the environmental laws of this state. These violations of the Consent Order, this Court's temporary injunction and the laws of the State of Connecticut merit severe civil penalties.
Without necessarily adopting the same, it is useful in a case such as this to arrive at the maximum penalties that might be assessed in order to use this as a gage in assessing final penalties. For this purpose the Court adopts the calculation of days and maximum penalties set forth by the Commissioner in his brief at page 101 and 102:
 "Treating all of the violations of the Consent Order as a single violation, the evidence above demonstrates continued violation from May 29, 1998 until the time of trial which began on September 26, 2000 — a period of 850 days. Disposal of solid waste at Parcel A went on for the same period; dumping CD began on May 29, 1998; the waste remained on site until the time of trial and scrap metal and frag metal were on site and uncovered. The volume reduction facility was operating for at least 515 days, from May 29, 1998 until October 26, 1999. The transfer station operated on Parcel C continuously, as a regular part of the business, from May 29, 1998 until October 26, 1999 (515 days), and operated on Parcel B from October 26, 1999 until November 24, 1999, an additional 29 days, for a total of 544 days. The Tire Pond continued to receive additional tires until at least the fall of 1999 and other disposal activities involving CD and glass aggregate took place at that site until July 19, 2000. All the tires and CD remain on the site to this day, as does some significant portion of the CT Page 13044 glass, which went into the Tire Pond. Thus, disposal on Parcel B also continued from May 29, 1998 until the time of trial, 850 days. Finally, each of the four solid waste facilities — the disposal area and volume reduction plant on Parcel A, the transfer station on Parcel C and B and the disposal area on Parcel B — each created a continuing discharge to the waters of the state, during the period set out above. The number of days of the violation produced the maximum possible penalty of $281,600,000" as follows:
 Violations of the Consent Order: 850 x 25,000 = $ 21,250,000 22a-208 (a), Unpermitted Solid Waste Disposal Area, Parcel A: 850 x 25,000 = $ 21,250,000 22a-208 (a), Unpermitted Volume Reduction Plant, Parcel A: 515 x 25,000 = $ 12,875,000 22a-208 (a), Unpermitted Transfer Station, Parcels B C: 544 x 25,000 = $ 13,600,000 22a-208 (a), Unpermitted Solid Waste Disposal Area, Parcel B: 850 x 25,000 = $ 21,250,000 22a-430, Unpermitted Discharge from Disposal Area, Parcel A: 850 x 25,000 = $ 21,250,000 22a-430, Unpermitted Discharge from Volume Reduction Plant: 515 x 25,000 = $ 12,875,000 22a-430, Unpermitted Discharge from Transfer Station: 544 x 25,000 = $ 13,600,000 22a-430, Unpermitted Discharge from Disposal Area, Parcel B: 850 x 25,000 = $ 21,250,000
 Maximum Total Penalties $281,600,000
The Court agrees with the plaintiff that the factors discussed by the Supreme Court in Carothers v. Capozziello, 215 Conn. 82, 103-105 (1990), should form the framework for analyzing the appropriate penalties for all of the violations set out in the complaint. These factors include, but are not limited to, (1) the size of the business involved; (2) the effect of the penalty or injunctive relief on its ability to continue operation; (3) the gravity of the violation; (4) the good faith efforts made by the business to comply with applicable statutory requirements; (5) any economic benefit gained by the violations; (6) deterrence of future violations; and (7) the fair and ethical treatment of the regulated community. In addition the Court is entitled to take into account the defendants' history of non-compliance Kenney v. DurableWire, 1995 Conn. Supra. Lexus 3541. CT Page 13045
In assessing the gravity of this situation the Court is of the opinion based upon the testimony of Miss Elsie Patton, the state's expert on water pollution, that the violations by the defendants created a very serious danger by creating leachate which would cause contamination of the waters of the Quinnipiac River and also the testimony by neighbors that smog, dust, traffic and noise created by the operations had very adverse effects upon the neighborhood. There was also substantial and very dramatic testimony by a tire fire expert from the EPA as to the fire danger presented by the Tire Pond. While most of the tires are underwater it still appears to be quite possible based upon this testimony that if some of them caught fire those remaining below would rise and would tend to feed that fire and a truly great disaster of smoke and oil could pollute the air and waters of the Quinnipiac River.[3] Such a fire would also cause the evacuation of many homes and businesses and interruption of power lines. According to his testimony, a fire at the Tire Pond would be a nightmare for the local community and also be a disaster to the delicate local environment, having particular reference to the wild life in the marsh.
There was substantial evidence presented that the defendants saved substantial money by stopping the payment for a consultant, never posting a bond for closure of the Tire Pond, nor posting a bond for the dike stabilization plan. In addition they earned approximately $450 for each 30 cubic yard roll-off container of tires that they picked up and dumped into the Tire Pond, the estimate being approximately $30,000 in profits to Mr. Farricielli. Also there was an estimate to the effect that he would have made approximately $570,000 in the period between March 1999 and March 2000 by dumping waste at Parcel A without having to pay tipping fees of approximately $300 at a landfill. In the opinion of the Court this is a conservative estimate.
In considering the history of the violations of the defendants the plaintiffs produced evidence of violations by Mr. Farricielli of a first administrative order issued in 1974.
The Commissioner entered an order of notice and tentative determination on January 29, 1996, in which he made numerous findings including determinations that Mr. Farricielli and the other defendants operated a solid waste disposal area, volume reduction facility, and a transfer station without the necessary permits. The types of solid waste identified in the order included tires, demolition debris, construction waste, land clearing debris, sludge type material and asbestos containing material. Mr. Farricielli requested a hearing and during the pendency of the hearing the Consent Orders which formed the basis for the instant suit were negotiated. CT Page 13046
The recitation of Mr. Farricielli's violation history have been verified by final orders and stipulations for judgment and clearly demonstrates that he should be viewed as a persistent violator. In the opinion of the Court Mr. Farricielli did not make any substantial good faith efforts to comply with the Consent Order or the environmental laws of the state. One of the factors set out by the Capozzielo court is whether or not a significant penalty will have an effect on the defendants' ability to continue in business, having in mind, of course, the effect upon employees. According to the testimony of the defendant himself all of his companies are not in business any longer.
Judgment may enter for the plaintiff, declaring:
1. The defendants, and each of them, violated the Court's January 3, 2000 temporary injunction by bringing new solid waster to Parcel B, including construction and demolition waste, and fresh glass. These violations constitute contempt of Court and the Court so finds.
2. Defendants, and each of them, are in default of their obligations under the Consent Order, dated February 25, 1998, by failing, without legal justification, to perform the affirmative obligations set forth in the order, and by operating a solid waste disposal facility, a volume reduction facility, and a transfer station without appropriate permits from the Commissioner of Environment Protection. While somewhat different from the relief requested in the complaint, the Court issues the following injunction, the aim of which is to permit remediation at the site to be done by parties unrelated to the defendants because of the defendants' proven inability to comply with the provisions of the Consent Order; (1) Defendants shall retain a qualified consultant or consultants, acceptable to the Commissioner, for the purposes of conducting the affirmative obligations set forth in the Consent Order concerning closure of the Tire Pond, stabilization of the dike, and the remediation of the wetlands. Defendants shall continue to retain such consultants until all affirmative obligations in the Consent Order have been completed in full. The consultant or consultants shall perform work at the site at the sole discretion of the Commissioner. Defendants and their agents, employees, or officers, shall not give instructions to the consultants, nor shall they interfere in their work on the site. In the event the defendants fail to retain such a consultant within sixty days of the date of this judgment, the Commissioner may retain a consultant or consultants to perform the affirmative obligations of the Consent Order.
3. In the event the Commissioner finds that the defendants have again defaulted on their obligations under the Consent Order and this judgment, he may take any actions which he deems necessary and appropriate to address environmental conditions at the site including, but CT Page 13047 not limited to, security of the site, conducting monitoring at the site, and retaining a consultant or consultants to perform work set out in the Consent Order.
4. Within sixty days of the date of this judgment, the defendants, jointly and severally, shall post a bond in the amount of $1,000,000 to ensure completion of the provisions of the Consent Order. The provisions of R.C.S.A. Section 22a-209-4 (i) shall govern the form, posting, and release of this bond.
5. Within thirty days of the date of this judgment, the defendants, jointly and severally, shall post a bond in the amount of $45,000, for the cost of the third party to perform the requirements of the dike stabilization plan. The provisions of Section R.C.S.A. Section 22a-209-(i) shall govern the form, posting, and release of this bond.
6. The defendants shall be liable, jointly and severally, for any costs incurred by the state, or by any parties retained by the Commissioner for the purpose of performing any of the actions required by the Consent Order. Payment shall be made within thirty days of the submission of any bills to the defendants by the Commissioner. Any costs expended by the state to address remediation of the site shall constitute a lien on Parcel B and the North Haven parcel. In retaining any parties for the purpose of performing any of the acts required by the Consent Order the Commissioner shall insure that the charges for such work are the normal charges for similar work within the Hamden area.
7. To the extent that final cover material is sufficient to cover that area of the Parcel A landfill not covered by the Commissioner's use of the (Q-park) bond, the defendant shall jointly and severally pay the cost to the state of obtaining said final cover material. Payment shall be made within thirty days of the submission of any bills to the defendant by the Commissioner and any costs expended by the state to obtain said additional cover material shall constitute a lien on Parcel A.
8. The defendants who currently hold title of Parcel A, Parcel B, and the North Haven Parcel shall grant the Commissioner an environmental land use restriction, consistent with Connecticut General Statutes §22a-133n, et seq., prohibiting any use of the property, during or after closure, without the written approval of the Commissioner. This environmental land use restriction shall be recorded on the Land Records of the Towns of Hamden and North Haven, respectively.
9. Until the defendants have fully complied with the provisions of this judgment, they shall notify the Commissioner in writing, no later than fifteen days after transferring ownership, of all or any portion of the CT Page 13048 facility or obtaining a new mailing or location address. The defendants obligation under this judgment shall not be affected by the passage of title to any portion of this facility to any other person or municipality.
In addition to the above, the following prohibitory injunction shall issue:
1. The defendants, and each of them, are permanently enjoined from any further violations of paragraph 2, page 7 of the Consent Order.
2. The defendants, and each of them, are permanently enjoined from operating any solid waste facility, or from engaging in any business involving the transfer, management, handling, or disposal of any solid waste, on any of the parcels involved in this litigation, without obtaining the necessary permits from the Commissioner and/or the Town of Hamden.
3. The defendants, and each of them, are permanently enjoined from creating, originating, or maintaining a discharge into the waters of the state without a permit.
4. The defendants, and each of them, are permanently enjoined from placing any material, of any nature, into the Tire Pond, without giving notice to the Commissioner concerning the volume and exact type of material and exact date or dates when the defendants intend to dispose of such material. The defendants shall perform any testing required by the Commissioner, after such notice, and shall not place any material of any nature into the Tire Pond without the prior written approval of the Commissioner.
5. The defendants, and each of them, are permanently enjoined from interfering with any and all efforts to remediate environmental conditions at the site performed by the agents or employees of the Commissioner, or any third party retained for such purpose by or on behalf of the Commissioner. Defendants shall take all steps necessary to prevent their agents, employees, tenants, and any other parties which are within their control, or are acting on their behalf, from interfering in any way with remedial activities at the site performed by agents or employees of the Commissioner, or any third party retained for such purpose by or on behalf of the Commissioner.
6. The defendants, and each of them, are permanently enjoined from preventing any agents or employees of the Commissioner from having access to the site, at any time, for the purpose of determining compliance with this judgment. CT Page 13049
7. Nothing in this judgment shall affect the Commissioner's authority to take any appropriate action, and institute any proceeding, to prevent or abate pollution at the site.
8. Nothing in this judgment shall relieve the defendants of any other obligations under applicable federal, state and local law.
9. The injunctive provisions of this judgment shall be binding upon the defendants and their agents, successors and assigns.
As indicated earlier, it is the opinion of this Court that the allegations in the complaint have been well documented by the plaintiffs in the presentation of evidence during the trial and also have been well documented and detailed in the plaintiffs briefs. For this reason, the Court has adopted most of the recommendations with respect to the injunction. However, the Court cannot accept the penalties recommended. While the penalties recommended are far less than what the maximums could be under the circumstances, it is the opinion of the Court that even the reduced penalties recommended, totaling as they do, $12,743,000, would be unrealistic and possibly result in confiscation of the property of the defendants. In assessing these penalties, the Court must take into account also the considerable additional expense that will be caused by the defendants' compliance with the injunction and the Consent Order.
The Court herewith imposes the following civil penalties:
 Violations of the Consent Order: 850 x 500 = $ 425,000 22a-208 (a), Unpermitted Solid Waste Disposal Area, Parcel A: 850 x 500 = $ 425,000 22a-208 (a), Unpermitted Volume Reduction Plant, Parcel A: 515 x 100 = $ 51,500 22a-208 (a), Unpermitted Transfer Station, Parcels B C: 544 x 100 = $ 54,400 22a-208 (a), Unpermitted Solid Waste Disposal Area, Parcel B: 850 x 500 = $ 425,000 22a-430, Unpermitted Discharge from Disposal Area, Parcel A: 850 x 500 = $ 425,000 22a-430, Unpermitted Discharge from Volume Reduction Plant: 515 x 100 = $ 51,500 22a-430, Unpermitted Discharge from Transfer Station: 544 x 100 = $ 54,400 22a-430, Unpermitted Discharge from Disposal Area, Parcel B: 850 x 500 = $ 425,000
 Maximum Total Penalties $2,336,800
CT Page 13050
With respect to the Town of Hamden C.G.S. § 22a-208a (b) authorizes a municipality to regulate the location of landfills under the Town Zoning Authority. C.G.S. § 8-1 through 8-13a delegates to all municipalities the authority to exercise, through a Zoning Commission, the power to regulate land use and the standing to enforce those land use regulations. Pursuant to this authority, the Town of Hamden in 1995 pursued an enforcement action against the defendants. As a result, the defendants and the Town of Hamden entered into a Stipulated Judgment which obligated the defendants to take affirmative steps to correct past violations and prohibited them from committing further violations. The evidence at trial clearly indicates that the defendants violated the terms of the Stipulated Judgment. The evidence shows that the defendants did not cease the unpermitted activities but instead continued to operate illegal solid waste disposal areas on Parcel A and Parcel B, a Volume Reduction Plant on Parcel A and Transfer Station on Parcels B and C since at least May 28, 1998. Just as these activities violate the Consent Order and state laws, they constitute a violation of the injunction entered under the Stipulated Judgment, a violation of Town ordinances and a violation of the requirements enforceable by the Town under C.G.S. §22a-208 (b). The defendants' property is within the coastal boundary as defined in C.G.S. § 22a-94, the Connecticut Coastal Management Act (CCMA). Under this statute, all activities within the state's coastal boundary area must receive prior review and approval from a municipal board of commission. The defendant admitted that he regularly receives and stores uncovered piles of powdery volcanic ash called pumice. He also conceded that he had no permits from the town or the state to do so and he additionally admitted that trucks and trailers are deposited and stored on the site. While he did apply for a permit for temporary storage of fragmented metals and pumice and truck storage, when the DEP office of Long Island Sound Programs (LISP) returned same for failure to produce a plan to prevent the run-off of stormwater from the material storage areas, he continued the storage of these materials without a permit and never furnished the plan.
On March 31, 1999 the Hamden Zoning Enforcement Officer issued a cease and desist order to the defendants for failure to obtain special permits and site plan approval for the illegal storage of the materials mentioned above. The defendants did not cease and desist. This activity constitutes a willful contempt of the cease and desist order and an ongoing violation of the Hamden Regulations promulgated under CCMA and the State Wetlands Statutes § 22a-36 through 22a-45. Under Conservation Commission v.Price, 193 Conn. 414-429 (1984) and cases cited, the Town need prove only that the statues or ordinances were violated in order to obtain an injunction. The Town in conjunction with the state has produced more than sufficient evidence that the defendants willfully violated the Town CT Page 13051 regulations in terms of the injunction entered pursuant to the Stipulated Judgment. The evidence in this case demonstrates that the defendants' violations against the Town continued at least from May 29, 1998 until the time of trial — 850 days. The pumice, frag metal and truck storage penalties should be calculated from the date of the cease and desist order which is March 31, 1999 until the date of trial, 570 days. The statutory fines and penalties for violation of Town regulations are smaller than those allowable for violations of state laws and regulations. For this reason the Court believes it equitable to assess the maximum penalties allowable against the Town in this particular case because of the need to assess penalties with "teeth" in them. The Court therefore assesses the following civil penalties:
 8-12, Reg. VIII, subsection 801 (Penalty for violating Stipulated Judgment = $ 2,500 22a-208b, Reg. 731 (Unpermitted Solid Waste Disp. Area, Parcel A) 850 x $90 = $ 76,500 22a-208b, Reg. 731 (Unpermitted Volume Reduction Plant, Parcel A) 515 x $90 = $ 46,350 22a-208b, Reg. 731 (Unpermitted Transfer Station, Parcels B C) 544 x $90 = $ 48,960 22a-44 (b) (Unpermitted activities affecting wetlands — pumice) 570 x $1000 = $ 570,000 22a-44 (b) (Unpermitted activities affecting wetlands — trucks/frag) 570 x $1000 = $ 570,000 22a-108, Reg. 850 (Unpermitted activity in coastal boundary — pumice) 570 x $90 = $ 51,300 22a-108 (Unpermitted activity in coastal boundary — trucks/frag) 570 x $90 = $ 51,300
 Maximum Total Penalties: $1,416,910
The Court also finds the defendants in contempt and enters a judgment in favor of Hamden and the Zoning Enforcement Officer as follows:
(a) The Court finds the defendants in contempt and permanently restrains them from violations of the laws and regulations set forth herein.
(b) The defendants are ordered to comply with the terms of the injunction entered pursuant to the Stipulated Judgment including, but not limited to, (i) an order for removal and proper disposal of all solid waste, scrap metal, piles of pumice and fragmented metals, trucks, trailers and car parts brought to the site during the 850 days covered by this action; (ii) an order mandating the removal and proper disposal of all solid waste brought to the site without a permit; (iii) an order that unless permits and approvals required by Hamden Regulations that state CT Page 13052 law have issued, Parcels A, B and C shall not be used for the disposal, transfer, storage, receiving and/or other activity involving tires, solid waste, pumice, top soil, fragmented metal, trucks, trailers and/or car parts and that all excavation and filling activities on the property cease; and (iv) an order that defendants initiate the closure and capping of the Tire Pond in accordance with the Closure Plan incorporated into the Consent Order.
In addition, the Court awards the Town of Hamden its costs and attorneys fees, the same to be submitted to the Court for approval.
Hale, JTR